*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0197**

RAM Mutual Insurance Company,
Respondent,

vs.

EMC Property & Casualty Company, et al.,
Appellants,

John Shriver as Trustee for the Next of Kin of
Christian David Kruckow, and Rolland Fred Kruckow,
Respondents.

**Filed August 25, 2014
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Cass County District Court
File No. 11-CV-13-520

Robert C. Barnes, McCarthy & Barnes, PLC, Duluth, Minnesota (for respondent)

Joseph F. Lulic, Molly A. Eiden, Hanson, Lulic & Krall, LLC, Minneapolis, Minnesota (for appellants)

James S. Ballentine, John C. Goetz, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota (for respondent John Shriver as Trustee for the Next of Kin of Christian David Kruckow)

Stephen F. Rufer, Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Fergus Falls, Minnesota (for respondent Rolland Fred Kruckow)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

This appeal stems from a dispute regarding insurance coverage and application of an intentional-act-exclusion clause. Appellant insurer challenges the district court's denial of its motion for summary judgment and the district court's grant of summary judgment for respondents. Because the district court did not err by denying appellant's motion for summary judgment, we affirm in part. But because there are genuine issues of material fact regarding application of the intentional-act exclusion in appellant's policy, we reverse the grant of summary judgment for respondents and remand for trial of this declaratory-judgment action.

**FACTS**

On June 28, 2011, respondent Rolland Fred Kruckow shot and killed his brother, C.K. Respondent John Shriver, trustee for the next of kin of C.K., sued Kruckow for wrongful death. At the time of the shooting, Kruckow had a homeowner's insurance policy with appellant EMC Property & Casualty Company and a farm-insurance policy with respondent RAM Mutual Insurance Company. Kruckow requested defense and indemnity from EMC and RAM. EMC denied Kruckow's request, relying on an intentional-act exclusion in its policy.

RAM commenced this declaratory-judgment action, seeking a declaration that it had no duty to defend or indemnify Kruckow, and that EMC is obligated to defend and

2

indemnify Kruckow in the wrongful-death action and to contribute to any expenses that RAM incurred in defending and indemnifying Kruckow. RAM subsequently took the position that it was obligated to defend and indemnify Kruckow. Kruckow filed a cross-claim against EMC seeking a determination that EMC is required to provide coverage under its insurance policy. Shriver filed a counterclaim against EMC seeking a declaration that EMC has a duty to defend and indemnify Kruckow in the wrongful-death action.

The parties engaged in discovery, which included Kruckow's deposition. At the deposition, Kruckow asserted his Fifth Amendment privilege against self-incrimination and refused to answer any questions regarding his competency or the facts and circumstances surrounding C.K.'s death.

All parties moved for summary judgment. EMC argued that (1) Kruckow's actions "were of such a nature that intention to inflict injury can be inferred as a matter of law," (2) Kruckow "failed to comply with his [discovery] obligations," and (3) the declaratory-judgment act is inapplicable. Respondents argued that the intentional-act exclusion in EMC's policy does not apply based on Kruckow's diagnosed mental illness.

As to Kruckow's mental health, the district court received expert affidavits from Dr. Shane Wernsing and Dr. James H. Gilbertson. Dr. Wernsing opined that, due to mental illness, Kruckow did not know the nature of the wrongfulness of his act when he shot C.K. Dr. Gilbertson opined that, at the time of the shooting, Kruckow was mentally ill and therefore unable to control his conduct, regardless of any moral understanding of the nature of the wrongfulness of his conduct.

3

The district court denied EMC's motion for summary judgment and granted respondents' motions, concluding that "Rolland Kruckow did not possess the intent necessary for the intentional act exclusion to apply." This appeal follows.

## DECISION

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

## I.

We first review the district court's denial of EMC's request for summary judgment. EMC argues that "[t]he district court erred in concluding that Rolland Kruckow's refusal to testify at his deposition should not result in dismissal of his claim." EMC relies on *Parker v. Hennepin Cnty. District Court, Fourth Judicial District*, 285 N.W.2d 81 (Minn. 1979), and *Christenson v. Christenson*, 281 Minn. 507, 162 N.W.2d 194 (1968).

4

In *Christenson*, the supreme court held that, although a plaintiff in a divorce action could not be compelled to waive her privilege against self-incrimination, "she must either waive it or have her action dismissed." 281 Minn. at 524, 162 N.W.2d at 204. The supreme court reasoned that the "[p]laintiff in commencing the action invoked, and submitted herself to, the jurisdiction of the [district] court. At the same time she subjected herself to and must comply with our Rules of Civil Procedure . . . ." *Id*. at 521, 162 N.W.2d at 203.

In *Parker*, the supreme court held that "[a] court order which deems admitted allegations in a request for admission does not violate the Fifth Amendment rights of the party upon whom the request was served," nor the Minnesota Constitution. 285 N.W.2d at 82. The supreme court noted its holding in *Christenson*, stating: "This court will not permit a *plaintiff* to use the judicial forum to make allegations only to later insulate himself by invoking the Fifth Amendment as a shield from cross-examination." *Id*. at 83 (emphasis added). However, the supreme court also noted that "[i]nvocation of the Fifth Amendment by a civil *defendant* . . . requires a more subtle response because of the involuntary nature of a defendant's participation in a lawsuit, and the appearance of compulsion." *Id*. (emphasis added).

In both *Christenson* and *Parker*, the Fifth Amendment issue was raised and determined in the context of a motion for sanctions for failure to comply with discovery. *Id*. at 82; *Christenson*, 281 Minn. at 510, 162 N.W.2d at 196. It does not appear that EMC moved for an order compelling discovery or requested sanctions. *See* Minn. R. Civ. P. 37 (providing for motions to compel discovery and sanctions). Instead of raising

5

Kruckow's refusal to answer questions at his deposition in a motion to compel with attendant sanctions for noncompliance, EMC requested summary-judgment dismissal. We question whether a motion for summary judgment was a proper method of challenging Kruckow's refusal to answer questions at his deposition. *See* Minn. R. Civ. P. 56.03 (stating that summary "[j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law"). We nonetheless consider EMC's argument, but we review the district court's decision as a discovery-sanction ruling. A district court's ruling on a request for a sanction for failure to comply with discovery is reviewed for an abuse of discretion. *See Chicago Greatwestern Office Condo. Ass'n v. Brooks*, 427 N.W.2d 728, 730 (Minn. App. 1988) ("The choice of a sanction for failure to comply with a discovery order is a matter within the [district] court's discretion.").

Here, Kruckow is a defendant in the underlying declaratory-judgment action. Although he filed a cross-claim against EMC with his answer, he is unlike the plaintiff in *Christenson* who commenced the underlying lawsuit and thereby invoked the jurisdiction of the district court. *See Christenson*, 281 Minn. at 521, 162 N.W.2d at 203. Kruckow is more similarly situated to the defendant in *Parker*, whose participation in the lawsuit was involuntary. *See Parker*, 285 N.W.2d at 83. Because *Christenson* is factually distinguishable, the district court did not abuse its discretion by refusing to dismiss Kruckow's cross-claim against EMC under *Christenson*.

6

EMC also argues that "this action was improperly brought as a declaratory judgment action" because "[t]here is no issue regarding whether the [p]olicy's terms are ambiguous and no construction of the [p]olicy's language is needed. There is also no issue regarding validity of the [p]olicy." EMC contends that "the proper cause of action would have been an alleged breach of contract brought by [Kruckow] and a contribution/indemnity claim on behalf of RAM" and that "Shriver simply has no standing to make a direct claim against EMC."

Under the Uniform Declaratory Judgment Act,

> [a]ny person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Minn. Stat. § 555.02 (2012).

RAM and Kruckow sought a "declaration of rights" under a "contract," specifically, whether EMC was required to defend and indemnify Kruckow under the language of its policy. That issue was appropriately raised in a declaratory-judgment action. *See Inland Constr. Corp. v. Cont'l Cas. Co.*, 258 N.W.2d 881, 884 (Minn. 1977) ("To resolve questions of policy coverage and the insurer's duty to defend, we have previously endorsed the use of a declaratory judgment proceeding prior to litigation of the substantive claims against the insured.").

As to Shriver, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Minn. Stat. § 555.11 (2012). As trustee for C.K.'s next of kin and the party who initiated the wrongful-death suit, Shriver has an interest in the district court's determination of EMC's duties under the policy because its determination could affect Shriver's recovery in the wrongful-death action.

In sum, the district court did not err by denying EMC's request for summary judgment, and we affirm the denial.

**II.**

We next address the district court's grant of summary judgment for respondents, which is based on its conclusion that the intentional-act exclusion in EMC's policy is inapplicable. The interpretation of an insurance policy, including whether an insurer has a legal duty to defend or indemnify its insured, is a question of law, which this court reviews de novo. *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996). "Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend." *Bobich v. Oja*, 258 Minn. 287, 293, 104 N.W.2d 19, 24 (1960). An insurance policy's exclusions are construed strictly against the insurer. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). The insurer generally bears the burden of proving that policy exclusions apply to bar coverage. *Indep. Sch. Dist. No. 197 v. Accident and Cas. Ins. of Winterthur*, 525 N.W.2d 600, 608 (Minn. App. 1995), *review denied* (Minn. Apr. 27, 1995).

The intentional-act exclusion in EMC's policy states that there is no coverage for bodily injury "which is expected or intended by an 'insured.'" "[T]he law in Minnesota is well-settled: an intentional act exclusion applies only where the insured acts with the specific intent to cause bodily injury." *State Farm Fire & Cas. Co. v. Wicka*, 474 N.W.2d 324, 329 (Minn. 1991). "[T]he necessary intent may be established by proof of an insured's actual intent to injure or by inference, when the character of the act is such that an intention to inflict injury can be inferred as a matter of law." *Id.* "The inference arises when the nature and circumstances of the insured's act were such that harm was substantially certain to result." *Id.* "[W]here there is no intent to injure, the [intentional-act exclusion does not apply], even if the conduct itself was intentional." *American Family Ins. Co. v. Walser*, 628 N.W.2d 605, 612 (Minn. 2001). EMC contends that "material fact disputes exist as to whether, at the time of the shooting, Rolland Kruckow had the mental capacity to intend to injure [C.K.]"

The Minnesota Supreme Court has twice addressed application of intentional-act exclusions in cases involving mental illness. In *Wicka*, the supreme court explained that "an insured's cognitive capacity is presumed," but that the presumption can be rebutted. 474 N.W.2d at 330. The supreme court held that

> for the purposes of applying an intentional act exclusion contained in a homeowner's insurance policy, an insured's acts are deemed unintentional where, because of mental illness or defect, the insured does not know the nature or wrongfulness of an act, or where, because of mental illness or defect, the insured is deprived of the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness.

9

*Id.* at 331. The supreme court stated that "intent becomes a question for the trier of fact when the evidence suggests that the insured was not the master of his own will." *Id.* at 330.

*B.M.B. v. State Farm Fire & Cas. Co.* also involved application of an intentional-act exclusion. 664 N.W.2d 817, 819-20 (Minn. 2003). The supreme court held that

> where there is a genuine issue of material fact as to whether the insured's acts were "unintentional" because of mental illness, as set forth in the holding of *Wicka*, 474 N.W.2d at 331, and therefore outside the scope of an insurance policy's intentional act exclusion, the [district] court shall submit the issue to the jury and is not, as a matter of law, to infer the insured's intent to cause injury.

*Id.* at 823.

*Wicka* and *B.M.B.* guide our analysis. As noted in *Wicka*, "the law presumes sanity." *Wicka*, 474 N.W.2d at 330. We therefore begin with the presumption that Kruckow was sane when he shot C.K. In the absence of evidence tending to rebut the presumption, one could infer that Kruckow intended to harm C.K. when he fired five bullets into C.K.'s chest. *See B.M.B.*, 664 N.W.2d at 822 ("The general rule is that intent is inferred as a matter of law when the nature and circumstances of the insured's act are such that harm is substantially certain to result." (quotation omitted)). And if Kruckow intended to harm C.K., the intentional-act exclusion would bar coverage under EMC's policy. *See id.* ("In such cases, the court holds as a matter of law that the insured's conduct comes within the intentional act exclusion of a liability policy.").

But respondents submitted expert affidavits tending to rebut the presumption of sanity under the *Wicka* standard. *See Wicka*, 474 N.W.2d at 330. Dr. Wernsing opined

10

that due to mental illness, Kruckow did not know the nature of the wrongfulness of his act when he shot his brother. And Dr. Gilbertson opined that, at the time of the shooting, Kruckow was mentally ill and therefore unable to control his conduct, regardless of any moral understanding of the nature of the wrongfulness of his conduct. However, it does not follow that summary judgment is appropriate. Respondents' evidence merely creates genuine issues of material fact regarding Kruckow's intent. *See B.M.B.*, 664 N.W.2d at 822 ("[I]n situations where the evidence permits the trier of fact to infer that the insured did not intend his conduct to cause injury, whether the insured intended to injure his victim will be put to the trier of fact.")

Moreover, in *Southcross Commerce Ctr., LLP v. Tupy Props., LLC*, this court held that

> when a nonmoving party to a summary-judgment motion puts forth undisputed evidence that conclusively establishes a rebuttable presumption in its favor, the moving party is precluded from obtaining summary judgment. Once the nonmoving party has established a rebuttable presumption in its favor, a genuine issue of material fact is created as to whether the presumption can be overcome by the moving party. Determining whether the moving party has rebutted the presumption requires the weighing of available evidence against the presumption, which is not appropriately undertaken in summary-judgment proceedings.

766 N.W.2d 704, 709 (Minn. App. 2009).

In this case, the law establishes a rebuttable presumption that Kruckow was sane when he shot C.K. *See Wicka*, 474 N.W.2d at 330. Respondents' affidavits in support of summary judgment create a genuine issue of material fact regarding whether the presumption can be overcome. Summary judgment is therefore inappropriate, and the

11

district court erred by concluding that "Rolland Kruckow did not possess the intent necessary for the intentional act exclusion to apply."

Respondents argue that the district court properly granted summary judgment because "[a]ppellant provided the [district] [c]ourt with no admissible contrary evidence." Although an insurer generally bears the burden of proving that a policy exclusion applies to bar coverage, *see Winterthur*, 525 N.W.2d at 608, the burden is modified in the context of a mental-illness claim against application of an intentional-act exclusion. In that context, the law establishes a rebuttable presumption of sanity that benefits the insurer, and the party asserting mental illness must rebut the presumption. *See Wicka*, 474 N.W.2d at 330 (explaining that "the law presumes sanity and places the burden of proving incapacity on the party asserting it"). Thus, EMC was not required to present evidence to defeat respondents' motion for summary judgment; it could rely on the legal presumption that Kruckow was sane when he shot C.K. and the undisputed facts in the record indicating that Kruckow intended the consequence of the shooting (i.e., that harm was substantially certain to result when Kruckow fired five bullets into C.K.'s chest). *See Southcross*, 766 N.W.2d at 709.

In sum, because there are genuine issues of material fact regarding whether Kruckow's conduct was intentional and, therefore, whether the intentional-act exclusion in EMC's policy applies, the district court erred by granting respondents summary judgment. *See B.M.B.*, 664 N.W.2d at 823 (holding that "where there is a genuine issue of material fact as to whether the insured's acts were 'unintentional' because of mental illness . . . and therefore outside the scope of an insurance policy's intentional act

12

exclusion, the [district] court shall submit the issue to the jury"). We therefore reverse the grant of summary judgment and remand for trial.

EMC argues that "[i]f this [c]ourt does uphold the district court's grant of summary judgment in favor of [r]espondents, it must find that the duty to defend is not retroactive to the date of shooting." Because we reverse and remand for trial on the coverage issue, the date of coverage, if any, should be determined in the district court.

**Affirmed in part, reversed in part, and remanded.**